UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSHUA MICHAEL DYER, | ) |
| | ) |
|         *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:15-cv-144-JHR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|         *Defendant* | ) |

***MEMORANDUM DECISION***[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing past relevant work as a delivery driver. The plaintiff seeks remand on the bases that the administrative law judge erred in weighing the medical opinion evidence and in assessing his credibility. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 15-1), attached to Fact Sheet for Social Security Appeals: Plaintiff (ECF No. 15), at 2-7. I affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 18, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 21.

requirements of the Social Security Act through December 31, 2017, Finding 1, Record at 11; that he had a severe impairment of Addison's disease, Finding 3, *id*.; that he retained the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c), Finding 5, *id*. at 13; that he was capable of performing past relevant work as a delivery driver, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id*. at 14; and that he, therefore, had not been disabled from October 15, 2012, his alleged onset date of disability, through the date of the decision, November 25, 2014, Finding 7, *id*. at 15.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work.  20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Weighing of Medical Opinions

The administrative law judge explained that, in assessing the plaintiff's RFC, she gave "great weight" to the opinions of agency nonexamining consultants J.H. Hall, M.D., and Lawrence P. Johnson, M.D., and treating physician S. Thomas Bigos, M.D., because they were "supported by substantial evidence[,]" and "[l]ittle weight" to the opinions of agency examining consultant Robert N. Phelps Jr., M.D., and treating nurse practitioner Stacia K. St. John, N.P., because "the medical evidence d[id] not support their assessments of the [plaintiff's] limitations." Record at 14 (citations omitted); *see also id*. at 59-61 (Hall), 71-73 (Johnson), 519-23 (Phelps), 595-96 (Bigos), 607-10 (St. John).

In a report dated February 13, 2014, Dr. Phelps stated, *inter alia*, that the plaintiff's ability to lift and carry occasionally was markedly limited, his ability to lift and carry frequently was severely limited, his ability to stand or walk was moderately to markedly limited, he required a hand-held assistive device to ambulate, his ability to push and/or pull was markedly limited at the right shoulder and left lower extremity and mildly limited at the right lower extremity, and he had no ability to bend, climb, balance, stoop, kneel, crouch, crawl, or reach on the right. *See id*. at 522-23.

Dr. Phelps explained that those limitations were based on (i) mildly limited cervical extension, (ii) the plaintiff's reported history of right shoulder dislocation with ongoing episodes of subluxing or possibly dislocation, together with a finding of snapping on examination, (iii) the plaintiff's reported history of increased back pain, together with findings on examination of marked thoracic kyphosis and limited side bending and extension, (iv) the plaintiff's reported history of bilateral hip pain, popping right hip, and increased pain with long strides and abduction, together with findings on examination of increased left hip pain on strength testing and right hip

3

pain on full flexion, and (v) the plaintiff's reported history of left knee injury, pain, swelling, the use of a knee support and cane, and difficulties driving, walking on uneven ground and stair climbing, together with findings on examination of left knee pain on straight leg raising, left thigh and calf atrophy, and a mild varus deformity. *See id*. at 523.

In a physical RFC opinion dated September 19, 2014, St. John indicated, *inter alia*, that the plaintiff could only occasionally lift/carry 10 pounds or less and rarely lift/carry 15 pounds or more, needed to lie down or recline for about three hours of an eight-hour workday due to fatigue and stress, could sit for only about five hours and stand/walk for only about an hour in an eight-hour workday, would need daily unscheduled breaks, and frequently experienced pain and/or stress severe enough to interfere with his attention and concentration. *See id.* at 608-09. She stated that the plaintiff was diagnosed with Addison's disease, hypothyroidism, anemia, gastritis, and gastroparesis, and had symptoms of nausea, dizziness, fatigue, weakness, and pain in the knees, hips, and back. *See id.* at 607.

Drs. Hall and Johnson, in physical RFC assessments dated February 20, 2014, and April 17, 2014, respectively, each found the plaintiff capable of lifting/carrying up to 50 pounds occasionally and 25 pounds frequently, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday. *See id*. at 60, 72. They indicated that, in light of the plaintiff's Addison's disease, it would be best to avoid heavy lifting, but his knee complaints did not seem limiting in that he was able to do cardio and weight exercise. *See id*. They noted that his hypothyroidism was not limiting, that no hip impairment was documented, and that he biked and jogged. *See id*. at 60, 73. They disagreed with the limitations set forth by Dr. Phelps, explaining that his opinion relied heavily on the plaintiff's subjective report of symptoms and limitations, was not supported by the totality of the evidence, and was "an

4

overestimate of the severity of the [plaintiff's] restrictions/limitations and based only on a snapshot of [his] functioning." *Id*. at 61, 73.

In a note dated July 31, 2014, Dr. Bigos, the plaintiff's treating endocrinologist, stated that he had declined to fill out Social Security disability paperwork for the plaintiff, explaining that "his endocrine diagnoses would not place him in a permanently disabled category since it would be expected that compliance with a replacement program of endocrine therapy would restore him to both a euthyroid and euadrenal state in which case there would only be very exceptional occupations for which he would be considered disabled." *Id*. at 595. He provided, as examples of "types of work that an endocrinologically restored person would be able to perform[,]" clerical work, manual labor, truck driving, and working as a mail carrier, teacher, or other professional. *Id*. at 595-96.

The plaintiff acknowledges that St. John, a nurse practitioner, is not an acceptable medical source as defined by Social Security regulations. *See* Statement of Errors at 3; *see also, e.g.,* 20 C.F.R. § 404.1527(a)(2) (defining "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); *id*. § 404.1513(a) (omitting nurse practitioners from list of "acceptable medical sources").

However, he argues that the administrative law judge wrongly summarily dismissed St. John's opinion by giving undue weight to Dr. Bigos' statement that his endocrine symptoms would be controlled on medication. *See* Statement of Errors at 4. He asserts that the Bigos statement was contradicted by other evidence, including (i) a thyroid scan on August 15, 2014, that found a significant abnormality, with attention needed, *see* Record at 567-68, (ii) an emergency department

5

record dated May 18, 2012, noting that the plaintiff had had repeated episodes of tonsillitis, *see id*. at 378, consistent with his testimony that he had ongoing difficulties even while compliant with his medication regimen, *see id*. at 41, and (iii) St. John's memorialization in her opinion of many of his symptoms, *see id*. at 607.  At oral argument, the plaintiff's counsel emphasized that his client's Addison's disease made him vulnerable to conditions such as colds and sore throats that, while not in themselves life-threatening, imposed work-related limitations.

The plaintiff adds that, in rejecting the St. John opinion, the administrative law judge committed the same reversible error described in *Ormon v*. *Astrue*, 497 Fed. Appx. 81 (1st Cir. 2012):

> The second difficulty [with the administrative law judge's rejection of the opinion of the claimant's treating source, Dr. Ross] concerns the ALJ's [administrative law judge's] determination that Dr. Ross's RFC assessment was inconsistent with the record evidence.  In this respect, Dr. Ross plainly was aware of the evidence that allegedly is inconsistent with the limits he placed on claimant's functioning; after all, Dr. Ross himself had made some of the findings to which the ALJ cited – negative straight leg raising, normal strength, and intact neurological functioning – and the record shows that Dr. Ross had received the essentially normal test results cited by the ALJ.  Given this, it is plain that, *despite* these findings and test results, Dr. Ross believed that claimant's back condition was real and placed real limitations on claimant's ability to function.  As a result, we think that, in a case involving complex back pain, such inconsistencies, standing alone, are not a sufficient basis upon which to reject a treating physician's opinion.  In any event, the primary evidence inconsistent with Dr. Ross's RFC assessment is the assessment of Dr. Gopal [an agency nonexamining consultant], and . . . this opinion is not well-explained and thus cannot be said to constitute *substantial* inconsistent evidence.

*Ormon*, 497 Fed. Appx. at 85 (emphasis in original).

I find no error in the rejection of the St. John opinion.  As a threshold matter, as the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 18) at 3, an administrative law judge need not provide "good reasons" for discounting the opinion of a "non-acceptable" treating source, as she must if addressing the opinion of an "acceptable" treating source, *see*, *e.g., Robshaw v. Colvin*, No. 1:14-cv-281-JHR,

2015 WL 3951959, at *4 (D. Me. June 28, 2015). Instead, an administrative law judge need only "explain the weight given to opinions from these 'other sources' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*. at *3-*4 (quoting Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2014), at 333).

The administrative law judge did so. She explained that:

1. Despite the plaintiff's history of complaints of back, shoulder, and knee problems and two surgeries on his left knee, the evidence failed to show that he had any medically determinable musculoskeletal impairment that had limited his work capacity for at least 12 consecutive months since his alleged onset date of disability, October 15, 2012. *See* Record at 11. Primary care records dated January 2013 (mistakenly referenced as February 2013) showed that the plaintiff felt well physically, and he told Dr. Phelps in February 2014 that he took only Tylenol and aspirin for pain control. *See id*.; *see also id*. at 428, 519. Although the plaintiff demonstrated significant limitation of motion during his examination by Dr. Phelps, Veterans Administration ("VA") records from March 2014 showed that he had a full range of motion, normal gait and stance, and no neurological deficits, and St. John stated that he had no need of an assistive device for ambulation. *See id*. at 11-12; *see also id*. at 559, 609.

2. Dr. Bigos' records demonstrated that the plaintiff's symptoms from Addison's disease and hypothyroidism were well-controlled when he was compliant with prescribed medications. *See id*. at 13-14. The plaintiff frequently failed to take the medications prescribed and felt "markedly improved" when he resumed taking hydrocortisone in April 2014. *See id*. at

14; *see also id*. at 549-51, 587, 601. In July 2014, Dr. Bigos noted that the plaintiff's apathy and fatigue were "notably improved." *Id*. at 593.

The assertedly contrary evidence to which the plaintiff points does not invalidate the administrative law judge's conclusion. As the commissioner notes, *see* Opposition at 5, the standard on review is whether substantial evidence, not each piece of evidence, supports a finding, *see*, *e.g*., *Manso-Pizarro*, 76 F.3d at 16. The evidence to which the administrative law judge pointed constituted substantial evidence in support of her rejection of the St. John opinion. In any event, as the commissioner points out, *see* Opposition at 5, the administrative law judge did not find that the plaintiff was symptom-free when compliant with his medications. She still assessed a severe impairment of Addison's disease. *See* Finding 3, Record at 11.

It is true that St. John, like Dr. Ross in *Ormon*, assessed a number of limitations that seemingly conflict with her own largely normal findings on examination. *Compare, e.g., id*. at 583-88 *with id*. at 608-10. Yet, *Ormon* is distinguishable in that (i) St. John, unlike Dr. Ross, was not an acceptable medical source, and (ii) the plaintiff does not argue that the opinion evidence on which the administrative law judge *did* rely – that of Drs. Hall, Johnson, and Bigos – individually or collectively could not stand as substantial evidence of his RFC.[2]

---

[2] The plaintiff does complain that "[t]he decision cites the [agency nonexamining consultants'] disability determinations without specific reference [to] medical records and without indication that . . . these were non-examining sources." Statement of Errors at 5. On the first point, he overlooks the administrative law judge's general discussion of the medical evidence, *see* Record at 11-14, to which she alluded in stating that the Hall and Johnson opinions were "supported by substantial evidence[,]" *id*. at 14. On the second point, the administrative law judge's failure to mention the fact that Drs. Hall and Johnson were agency nonexamining consultants is harmless. It is not error *per se* to give greater weight to the opinions of such consultants than to those of examining, treating, or testifying sources. *See, e.g., Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted); *Brackett v. Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) ("[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record

At oral argument, the plaintiff's counsel clarified that his client does not challenge the administrative law judge's rejection of the Phelps opinion. In any event, in his statement of errors, the plaintiff merely points out that he testified that he experienced the same kind of joint pain that Dr. Phelps identified and described during his examination. *See* Statement of Errors at 4; *see also* Record at 43 (plaintiff's testimony that he had joint pain, particularly around his hips but also in his shoulders, knees, and ankles, and that using stairs made his "knees hurt a lot"). That observation provides no basis on which to disturb the decision to accord the Phelps opinion little weight. The administrative law judge found the plaintiff's testimony not entirely credible. *See* Record at 13. While the plaintiff separately challenges that finding, *see* Statement of Errors at 6, for the reasons discussed below, he falls short of demonstrating that the administrative law judge erred in that regard.

Further, as the commissioner argues, *see* Opposition at 7-8, the administrative law judge otherwise identified substantial evidence in support of her decision to accord the Phelps opinion little weight. She noted, in relevant part, that the plaintiff reported feeling physically well in January 2013; primary care and VA records from 2013 and 2014 repeatedly indicated that he played sports and was exercising several times per week for an hour at a time; VA records dated December 2013 showed that he had normal strength and range of motion; in March 2014, he demonstrated full range of motion, normal gait and stance, and no neurological deficits; and in April 2014, Dr. Bigos noted that he was "markedly improved" after resuming taking hydrocortisone. *See* Record at 13-14. The plaintiff does not argue that any of these findings is

---

unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge.") (citations omitted).

unsupported by the record. *See* Statement of Errors at 3-5. In addition, both Drs. Hall and Johnson explicitly considered and rejected Dr. Phelps' opinion. *See* Record at 61, 73.

For all of these reasons, the plaintiff falls short of demonstrating that the administrative law judge's choice to credit the opinions of Drs. Hall, Johnson, and Bigos over those of St. John and Dr. Phelps was anything other than a permissible resolution of conflicts in the evidence. *See, e.g. Rodriguez,* 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the administrative law judge], not for the doctors or for the courts.").

## B. Credibility Determination

The administrative law judge deemed the plaintiff's testimony concerning his symptoms and their limiting effect not entirely credible, pointing to the evidence discussed above of normal findings on examination, notations that the plaintiff was playing sports and exercising several times a week, and marked improvement in his apathy, fatigue, and other complaints when he was compliant with medication. *See* Record at 13-14. She added:

> Evidence that the [plaintiff's] work ended in 2012 due to reasons unrelated to his impairments, and that he looked for work after the alleged onset date, also detract from the credibility of his claim of disability. Primary care records dated January 2013 show that [he] said he lost his job in September 2012 due to a motor vehicle accident, and that he had been unable to find work since then. Records dated March, May and June 2013 show that he was continuing to look for work.

*Id.* (citation omitted).

The plaintiff faults this determination on the basis that, because the symptoms to which he testified were noted in VA and emergency department records, the administrative law judge's explanation for finding them not credible lacks specific references and reasons, in contravention of Social Security Ruling 96-7p ("SSR 96-7p"). *See* Statement of Errors at 6.

This argument is without merit. SSR 96-7p does not require an administrative law judge to list and analyze every relevant factor *seriatim;* rather, it states: "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015), at 134; *see also, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

The administrative law judge supplied several specific reasons for assigning only partial credit to the plaintiff's statements about his symptoms and their effects. The plaintiff does not argue that any of the reasons actually given was unsupported by the evidence. *See* Statement of Errors at 6. No more was required.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 28th day of April, 2016.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge